## Thompson's Appeal.

107  559
155  416
107  559
200  417

1. A court of equity has jurisdiction to entertain a bill, filed by a married woman in possession of her separate real estate, to restrain repeated actions of ejectment by a purchaser at sheriff's sale of said property under a judgment against her husband, where such actions are brought, not in good faith, and (by means of voluntary nonsuits) are not prosecuted to judgment, but are brought and threatened with the alleged intent of compelling the payment of her husband's debt.

2. Where, in such case, the Master's finding of facts, confirmed by the court below, shows that the property in question was the undoubted separate estate of the wife, that the defendant's title is worthless, that his threatened use of the process of the courts is not in good faith, but with the intent to harass the complainant, and that such acts cast a cloud on her title, the court will grant equitable relief by injunction, restraining the defendant from bringing further actions of ejectment, and by compelling him to surrender such sheriff's deed for cancellation.

November 4th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and CLARK, JJ. STERRETT and GREEN, JJ., absent.

APPEAL from the Court of Common Pleas No. 1, of *Allegheny county:* In Equity: Of October and November Term, 1884, No. 144.

Appeal of George Thompson from a decree of the said court restraining him by injunction from bringing any action of ejectment against the appellees for certain premises, and ordering him to deliver up, to be cancelled, a certain sheriff's deed.

This was a bill in equity, filed by Samuel B. McElroy and Sarah B., his wife, in her right, against George Thompson, averring substantially, inter alia, as follows: Under a judgment obtained in 1875 against Samuel B. McElroy a certain tract of land fronting on Hiland avenue, in the City of Pittsburgh, containing about eleven acres, was levied upon as the property of said Samuel B. McElroy and sold at sheriff's sale as his property on December 15th 1877, to George Thompson, and a sheriff's deed executed to him therefor. Thompson brought an action of ejectment against the present plaintiffs in 1879, on the trial of which, in June, 1880, after the evidence on both sides was in, and the court had charged the jury, said Thompson suffered a voluntary nonsuit. In August, 1880, he brought a second action of ejectment on the trial of which in March, 1883, after the court had charged the jury, he also suffered a voluntary nonsuit. In each case the plaintiff's abstract of title filed showed that the said sheriff's deed was the foundation of his claim.

The complainant, Sarah B. McElroy averred, that the said

tract of land on Hiland avenue was her separate property, purchased by her during coverture with moneys of her separate estate, acquired by her in the manner fully set forth in the bill, independently of her said husband ; that her husband had no title or interest in said real estate, and therefore, no title whatever passed to George Thompson by said sheriff's sale thereof under the judgment against her husband.

That the respondent intends and threatens to bring another action of ejectment, based upon exactly the same title as he set up in the two prior actions of ejectment, and threatens to continue to annoy and vex the complainant by repeated actions of ejectment in order to compel her to pay him a large sum of money for his pretended title.

That by these means the respondent has cast a cloud upon the title of the complainant, Sarah B. McElroy, which prevents her from disposing of the property, or from obtaining advances on the credit thereof with which to pay interest on certain incumbrances which are overdue, whereby she is liable to lose the same.

The complainant, averring that she had no adequate relief at law for the injuries threatened (she being in possession of the premises), prayed equitable relief, as follows :

(1) That your Honors will now, by preliminary injunction, hereafter to be made final, restrain and enjoin the said respondent from bringing or instituting any further or other action of ejectment for the said property, by virtue of the said pretended title by him procured by reason of the sheriff's deed aforesaid, made to him on the sale upon the judgment obtained against the said Samuel B. McElroy.

(2) That your Honors will decide and decree that the said George Thompson, the respondent, has no title to or right or interest in the said Hiland avenue property, and that the said deed to him by the sheriff for said property, as the property of Samuel B. McElroy, conveyed no right, title or interest therein, or any part thereof, to the said George Thompson as against your oratrix.

(3) General relief.

Defendant demurred to the bill for want of equity, and because the title to real estate between parties claiming adversely cannot, within the statutory period of limitation, be determined by decree on a bill in equity.

The demurrer having been overruled by the court, the defendant filed an answer denying certain averments of the bill, and answering, inter alia, as follows :

Sixth. I admit that nonsuit was taken in my suit at 603 September Term, 1880, for the reason, among others, that I failed to obtain material evidence in my behalf, which I hope

yet to procure. I was not ready for the trial and was not present thereat. And I deny complainant's allegation that I threaten to annoy her by repeated actions of ejectment to compel payment to me of a large sum of money for my title. I maintain my claim in good faith, because I believe Samuel B. McElroy had an interest in said property so purchased by me as his at sheriff's sale.

Seventh. I deny the inferences and legal conclusions asserted by complainant, and aver that I believe I have a good ground for my claims, and that my proceedings are not malicious.

Eighth. I further submit that all the matters complained of in the bill are determinable at law, and that complainants are not entitled to any relief therein in a court of equity; that the title to the land in dispute is triable only by ejectment in a court of law, to which action I have an absolute right; that this court has no power by law to grant the prayers of the bill, and has no jurisdiction over the subject matter; and I ask to have the same advantage of this answer as of a plea or demurrer to the bill; and pray to be hence dismissed, &c.

The cause was referred to William S. Pier, Esq., as Examiner and Master, who filed a report, wherein, after reciting the contents of the bill, demurrer and answer, he reported the facts and his conclusions of law as follows:

1. That the plaintiff, Sarah B. McElroy, at the time of her marriage in 1852 with Samuel B. McElroy, her co-plaintiff, was seised in her own right of a separate estate.

2. That said separate estate consisted of a tract of land in Venango county, in this state, known as the Hickorytown lands, comprising about 2,300 acres; of an undivided one sixth interest in a tract of land in Allegheny county, afterwards known as the Knox fruit farm; and of an undivided one sixth interest in another tract in Allegheny county, fronting on the south side of the Monongahela river, and now within the city of Pittsburgh.

3. That she became seised of the said Venango county land by devise from her father, who died testate in 1834; and of the Allegheny county lands, by descent from her mother, who died intestate in 1850, leaving six children surviving.

4. That plaintiff, Sarah B. McElroy, conveyed the Venango county land in 1855 for a consideration of six thousand dollars, secured by promissory notes, which were renewed from time to time until about 1860.

5. That about 1860 she loaned to her husband, plaintiff Samuel B. McElroy, about eight thousand dollars, being the avails of the sale of the Venango county land, principal and interest, upon a parole agreement between them that he should

11 OUTERBRIDGE.—36

apply the same when she should require it for the purchase of a home.

6. That in 1859 Sarah B. McElroy conveyed her interest in the Knox fruit farm, pursuant to an agreement that in consideration thereof her interest in the Monongahela river tract should be increased to an undivided one half.

7. That this agreement was executed, and in 1867 upon the sale and conveyance of the said Monongahela river tract, one half of the consideration of forty thousand dollars, to wit, a purchase money mortgage for twenty thousand dollars was taken by said Sarah B., in the name of her husband, Samuel B. McElroy.

8. That this mortgage was sold by Samuel B. McElroy, August 31st, 1867, for the sum of $19,892.98, which sum was retained by him under agreement with his wife that he should repay himself thereout advances made by him for her in the purchase by her of a tract of land in the Twentieth ward, city of Pittsburgh, and should apply the balance, whenever she should require it, to pay for a home.

9. That on April 7th, 1866, plaintiff, Sarah B. McElroy, purchased and took in her own name a tract of land in what is now the Twentieth ward of the city of Pittsburgh, paying therefor a consideration of twenty-five thousand dollars.

10. That of this purchase money, $10,000 was paid in hand at the delivery of the deed, and the balance was secured by two mortgages on the land, made by herself and husband— one being for $11,000 and the other for $4,000.

11. That of the said hand money, about $8,000 was paid for Sarah B. McElroy by her husband out of her moneys in his hands, derived from the sale of the Venango county land, and the balance of about $2,000 was advanced by him for her.

12. That at this time, to wit, April 7th, 1866, the said Samuel B. McElroy was in good financial condition, and was worth, over and above his liabilities, more than one hundred thousand dollars.

13. That the said advance of about $2,000 and the said purchase money mortgages of $11,000 and $4,000 were all paid out of the proceeds of said Sarah B.'s interest in the said Monongahela tract.

14. That on March 22d, 1870, said Sarah B. exchanged said Twentieth ward tract for another in the Nineteenth ward of said city (to quiet the title to which this bill was filed) and gave in addition therefor, beside the said Twentieth ward tract, eight thousand dollars.

15. That she paid this $8,000 out of money which she borrowed on the security of a mortgage of the said Nineteenth

ward tract, which she and her husband, Samuel B. McElroy, executed August 3d, 1870.

16. That the said Nineteenth ward tract, to quiet the title to which the bill in this case has been filed, was purchased by said plaintiff, Sarah B., was paid for out of her separate estate, and that not any of the said land, and no portion of the consideration therefor came to her from her said husband.

17. That the deed to her of said Twentieth ward tract and of said Nineteenth ward tract, and all the other deeds of conveyance and mortgage of land in Allegheny county referred to in the bill were duly recorded in the Recorder's office of said county, and the will of said Sarah B.'s father was duly proved and registered in the Register's office of said county.

18. That immediately after the purchase thereof, on March 22d, 1870, said Sarah B. entered into possession of said Nineteenth ward tract, and by herself or her tenants, has ever since been, and is now, in possession thereof.

19. That defendant, George Thompson, on December 15th, 1877, took a sheriff's deed of all the right, title and interest of said Samuel B. McElroy in said Ninteenth ward tract.

20. That said George Thompson brought his action of ejectment on said sheriff's deed, against the plaintiffs in this case and others, to No. 467 March Term, 1879, in this court.

21. That said action was brought to trial June 2d, 1880, and the next day, after both sides had put in all their testimony, after counsel had addressed and the court had charged the jury, and after they had retired, said George Thompson took a voluntary non-suit.

22. That on August 28th, 1880, said George Thompson, the defendant, brought a second action of ejectment in this court, to No. 603, September Term, 1880.

23. That said action was brought to trial March 12th, 1883, and on the following day, after both sides had put in all their testimony, after counsel had addressed and the court had charged the jury, and after the jury had retired, said George Thompson took a voluntary non-suit.

23 a. That both actions of ejectment brought by said George Thompson against said Samuel B. McElroy and Sarah B., his wife, for the said Nineteenth ward land involved the same questions, were based upon the same sheriff's deed; that the plaintiff's abstract of title in both the said actions was the same; that the issue joined in each was the same; that the witnesses and testimony in each were substantially the same; and that the defence of said McElroy and his wife in each action was the same. And further, that the threat of another action of ejectment made by said George Thompson is based

upon the same sheriff's deed as his two former actions afore-said.

23 *b*. That the sheriff's sale and deed, which supplied the foundation of these ejectments, were obtained upon an execution against Samuel B. McElroy sur judgment against him in favor of the Tradesmen's National Bank of Pittsburgh, recovered in an action on a promissory note, whereof said Samuel B. was the maker and one James Briar was the indorser.

24. That said bank also recovered judgment on said note against said indorser.

25. That the defendant was the assignee for the benefit of the creditors of said indorser, and as such paid into court on said judgment $3,652.93.

26. That to make said payment into court, said defendant advanced of his own moneys more than $2,000, which is still owing to him.

27. That said defendant claims said Samuel B. McElroy is indebted to him in $3,600 or $3,700, made up of the said advance of over $2,000, his purchase money to the sheriff for his deed, and his expenses.

28. That the plaintiff, Sarah B., was in no manner connected with said judgments in favor of said bank, or liable for or upon the promissory note upon which they were obtained, or to said defendant for said claimed indebteness of her husband to him.

29. That said defendant brought the said ejectments to compel the payment of the said claimed indebtedness of said Samuel B. to him.

30. That said defendant, by means of said sheriff's deed, and by threats, has vexed and annoyed plaintiff.

31. The said defendant intends, and has threatened, to bring another action of ejectment against these plaintiffs, upon the said sheriff's deed and for the same land.

32. That the said sheriff's sale and deed, the said ejectment brought thereon, and said threats made by said defendant, have cast a cloud upon said plaintiff, Sarah B.'s, title to said land.

33. That the said land is encumbered with two mortgages, aggregating more than $23,000, both of which are due, and upon one of which foreclosure proceedings have been threatened, and plaintiff, Sarah B., because of said cloud upon her title, is unable to borrow money thereon, and she has not sufficient means of her own to pay the same, and is in danger of losing said land by reason thereof.

34. That defendant, George Thompson, at the time of the trial of his first ejectment, was prepared to produce and did produce all the evidence that he knew to exist and which he

thought material and relevant to his case, and that he has not since learned and does not now know of any other and further evidence to support his claim.

Counsel for the defendant have strenuously insisted before the Master that the court have no jurisdiction over a bill like this, or to decree the relief here prayed for, for the reason that the dispute between the parties is as to the title to land which can only be settled by trial at law, and that he, the defendant, can seek his redress at law at any time he may think proper within the period when the statute of limitations will bar him.

If the defendant did maintain his claim to the land in good faith; if he sought to recover it, relying upon and believing in the strength of his title, and if he had not already sought and secured full opportunity to obtain his redress and trial at law, his position would be unassailable.  Mere neglect to assert his title could not prejudice his right to a common law action at any time he chose to seek it within the period of limitation.  But if he uses his deed and ejectment thereon for an ulterior purpose, and not merely to recover the property; if by it he seeks to extort from the fears and vexations of the wife payment of her husband's debt, then his conduct is unlawful and perhaps fraudulent (Mayer v. Walter, 64 Pa. St. 286), and is a proper object for the exercise of the chancery powers delegated to the courts by the Acts of 1836, 1840 and 1857.

Now, the evidence of the defendant himself was that his object in bringing his actions of ejectment and in maintaining his claim to the land was to collect some $3,600 or $3,700 which Samuel B. McElroy owed him.  But ejectment is not a remedy for the collection of debts, and cannot be lawfully employed to extort their payment.  It is manifest, therefore, that the defendant has not maintained his claim to this land in good faith, but that his conduct in harassing the wife of his alleged debtor by two ejectments on a title which the evidence before the Master shows clearly to be worthless, in taking non-suits after putting in all the evidence within his power and knowledge, in asserting that he would continue to harass her in the same manner, and in demanding money as the price of peace under the cloak of purchasing his title, was fraudulent, and gives a right to the wife to seek aid from a court of equity:  Lyon's Appeal, 11 P. F. S. 15.

The evidence produced shows that defendant's claim upon his sheriff's deed has been and is a serious cloud upon the title of Sarah B. McElroy, the plaintiff, and has rendered it so unmarketable that it is in danger of being sacrificed to satisfy encumbrances against it.  Bills of peace, to remove clouds from title constitute a well defined and long established branch

of equity jurisprudence.   Says Story in his work on Equity
Jurisprudence, 12th Ed. § 711 :   "It is very common in courts
of equity to entertain suits for the purpose of removing a
cloud resting upon the plaintiff's title.   This is done upon
the ground that it is for the interests of both parties that the
precise state of the title be known if all are acting bona fide;
and if not, that a merely colorable and pretended claim is a
fraud upon the real owner, and as such should be extin-
guished."   See also High on Injunctions, § 372.   But the
counsel for the defendant contend that unless the legislature
have explicitly delegated such power to the Courts of Com-
mon Pleas, we in this state are without any such jurisdiction,
and they deny that such ever has been delegated.   But
whether it ever has been delegated or not, the Supreme Court
said in Pollard *v.* Shaffer, 1 Dall. 210, and again in Jordan
*v.* Cooper, 3 S. & R. 578, that "Equity is part of the law in
Pennsylvania," and therefore there must be somewhere juris-
diction to remove a cloud from a title.   In this connection the
paragraph just quoted from Story offers a solution.   "If the
parties act in good faith," he says, "it is to both their inter-
ests that the precise state of the title be known."   This then
could be ascertained here by having a verdict and judgment
in ejectment at law.   But if one of the parties has only "a
colorable and pretended claim, then it is fraud upon the real
owner."   The Acts of 1840 and 1857 have conferred upon the
Courts of Common Pleas, first in Philadelphia and then
throughout the state, chancery jurisdiction over frauds.   The
Master is of the opinion that the evidence adduced before
him shows that this court has jurisdiction of this case upon
this ground, to wit, that the defendant's claim of title is col-
orable only, and therefore a fraud upon the real owner, Sarah
B. McElroy.

Many authorities were cited by the defendant's counsel at
the argument before the Master, all of which he has carefully
examined.   None of them, in his judgment, in any manner
decide that a court of equity in Pennsylvania would not take
cognizance of such a case as this, and decree the relief prayed
for.   Several of them, and notably Craft *v.* Lathrop, 2 Wall.
Jr., 103, and Lyon's Appeal, 11 P. F. S. 15, he regards as strong
authority in support of the bill.   In Craft *v.* Lathrop, the U.
S. Circuit Court in this district, a defendant was restrained
who claimed, as is done here, that he could not be deprived of
his right to bring as many ejectments as he pleased until there
had been two verdicts and judgments for the same party, he
having in former trials taken non-suits.   But the court en-
joined him.   In Lyon's Appeal a wife owned land subject to
mortgage.   Judgments were recovered against her husband,
creditors alleging the land to be his.   They bought the mort-

gage, issued execution on it for the purpose of securing their judgment. The court enjoined the creditors from proceeding until they should execute an assignment to the wife on payment of the debt, interest and costs; for, although they had a right to execution on the mortgage at law, equity will look to the use to be made of the power, and if it be aside from the legal right to have satisfaction, will restrain the improper use.

Barclay's Appeal, 12 Norris 50, was the case upon which defendant most relied. There the plaintiff was the owner of a warehouse and lot, and after he purchased it a lot of machinery remained there, the property of its former occupants, whom he notified to remove it, and received a reply threatening to hold him responsible for the defendant's interest in the machinery and real estate. He asked the court, among other things, to decree that he had a good title. The Supreme Court dismissed the bill, reversing the lower court, saying, among other things: "If there is anything certain in the equity practice of Pennsylvania, it is that a court cannot by bill bring before it parties having adverse claims to land, and between whom there are no relations of trust or contract, and settle their several titles by decree. If it be said that Grove was in possession, and therefore could not bring ejectment in order to test the appellant's claim, it may be answered the goods of the partnership were upon the premises before his entry, and if either of the partners claimed to have them there of right, there was nothing to prevent the appellee from testing that right by ejectment." But in that case there was no fraud, no title, even colorable, exhibited to the court, and the facts shown in the bill as pointed out by the court, gave them a remedy by bringing ejectment at law. "The truth of the case seems to be," said the court, "that the appellee, alarmed by Barclay's ambiguous threat, has endeavored to interpose the decree of a court between himself and the possible consequences of the exercise of his own right. This, however, he cannot do. A trustee may seek the advice and protection of a court of equity, but such is not the right of an ordinary person. Such a one must take the risk of an assertion of his own rights, or leave them unasserted."

In Winch's Appeal, 11 P. F. S. 424, there was a dispute between a wife and her husband's creditor as to her title to land. She prayed an injunction against its sale on execution against her husband, which was granted after hearing before a Master, where the proof was not at all conclusive. The Supreme Court reversed, because "it is only when the creditor is proceeding clearly and undeniably against right and justice to use the process of the law to the injury of another, that equity interferes to stay his hand." None of the other cases

cited seem to the Master to bear upon the questions involved in this case, and he therefore forbears reviewing them here.

The Master being of the opinion that the relief prayed for should be granted, returns herewith the form of a decree to that end, which he respectfully recommends to the court.

The defendant filed numerous exceptions to the Master's findings of fact and conclusions of law, among others, the following: Defendant excepts to all the Master's findings of fact as questions entirely for a jury. The Master erred in finding (No. 16) that the tract in question was paid for out of the wife's separate estate and none of the consideration came from her husband. The Master errs (in his discussion on question of jurisdiction), in inferentially and hypothetically assuming facts not found, and that could not be found from the evidence, such as bad faith in defendant, want of confidence in his title, attempts to extort, threats to harass, demand of money as price of peace, unlawful and fraudulent conduct. And errs in his conclusion in favor of the jurisdiction in equity claimed by plaintiff. He also errs in holding or reporting that this proceeding, as a bill of peace, is within equity jurisdiction in this state. He errs in reporting that defendant's title is a fraud and therefore within equity jurisdiction.

The court filed no opinion on the exceptions, but according to the form reported by the Master, entered the following decree:—

" And now, July 1st, 1884, the above named cause came on to be heard upon bill, answer and proofs, and upon the Master's report and exceptions thereto, and was argued by counsel, and upon consideration thereof it is hereby ordered, adjudged and decreed that all the exceptions to said report be, and they are hereby, overruled, and that the defendant, George Thompson, be forever restrained and enjoined from bringing any action of ejectment against the plaintiffs, Samuel B. McElroy and Sarah B. McElroy, his wife, or those claiming under them, or under the said Sarah B., upon or by virtue of the sheriff's deed made to said George Thompson by virtue of a sale to him on execution levied upon a judgment recovered against said Samuel B. McElroy by the Tradesmen's National Bank of Pittsburgh, in this court at No. 1053 of December Term, 1871, for the lot of ground on which are erected two brick dwelling houses, two stables and other valuable improvements, situate in the Nineteenth ward of the city of Pittsburgh, Allegheny county, Pennsylvania, bounded and described as follows: . . . . . And it is further ordered, adjudged and decreed that the said George Thompson has no right to, or right or interest in, the said described land, and

that the said sheriff's deed to him conveyed no right, title or interest therein, or any part thereof ; and it is further ordered, adjudged and decreed that the said defendant, George Thompson, forthwith deliver up to the court, to be cancelled, the said sheriff's deed, and that he pay the costs of this suit, including a Master's fee, which is hereby taxed at one hundred and fifty dollars."

The defendant thereupon took this appeal, assigning for error the overruling of his said exceptions to the Master's report, and the above decree.

*John R. Large* (with him *Thos. J. Keenan*), for the appellant.—The radical error of the court below was in entertaining equity jurisdiction of the case. Nothing is better settled in Pennsylvania than that where two persons assert conflicting legal titles to land the remedy is at law. This principle has been recently forcibly stated by Mr. Justice GORDON in the following language : " If there is anything certain in the equity practice of Pennsylvania it is that a court cannot by bill bring before it parties having adverse claims to land, and between whom there are no relations of trust or contract, and settle their several titles by decree. We know of no power in equity or elsewhere by which the owner of an adverse title can be called into court by the party in possession to assert and defend that title, on penalty of forfeiture should he refuse to do so. While this might be a convenient and speedy method to settle title, the Statute of Limitations interposes, and a claimant cannot be compelled to assert his right or test his claim within a time less than the statutory period " : Barclay's Appeal, 12 Norris 50. To the same effect are North Penna. Coal Co. *v.* Snowden, 6 Wr. 488 ; Long's Appeal, 11 Norris 171. The action of the court cannot be sustained on any assumption of fraud, for there is no fraud charged in the pleadings : Brightly's Equity, p. 72, § 57. It cannot be on the allegation that appellant's title was obtained contrary to law. A creditor has a right to sell whatever right he believes the husband has in property standing in the wife's name. Equity cannot be used to obstruct the creditor in the collection of his claim : Winch's Appeal, 11 P. F. S. 424. The creditor in this case lawfully selling, the purchaser lawfully bought. Consequently his title was not obtained contrary to law. The recital of facts by the Master, as showing unlawful and fraudulent conduct in appellant, is not supported by the evidence. There was no proof of anything said or done by him showing bad faith, want of confidence in his title, attempts to extort, threats to harass, or demands of money as price of peace. But from all that appears he acted in the conscientious belief that the husband, whose title he

bought, had an interest in that property, and that he sought
to establish by his proceedings.   The *Statute of Limitations*
allows him ample time within which to test it, and if he brings
the actions the law allows, and from want of sufficient prepa-
ration chooses to take non-suit, the costs fall upon himself,
the loss is his own ; nothing is thereby determined against
him.   Equity jurisdiction in Pennsylvania depends on express
statute : Dohnert's Appeal, 14 P. F. S. 311.   It has not made
such strides as to take from the holder of an adverse title the
right to have the facts tried by a jury.

But even assuming the jurisdiction, the bill should have
been dismissed on the complainant's own showing.   The facts
found by the Master—as distinguished from his inferences
from facts and his assumptions of facts—instead of making
out a clear case of exclusive ownership and title in the wife,
make out a clear case to the contrary.   The entire evidence
of the plaintiffs themselves, taking it as true, shows that the
property, the title of Samuel B. McElroy in which was sold
to the appellant, was not purchased by the means of Mrs.
McElroy alone.   They allege that she realized in 1855 from
sale of her Venango property $6000 in notes.   Those were
given by her to her husband, to be used in his business, that
of dry goods merchant, and the amount to be repaid to her,
when she should want it to buy a home.   There was no agree-
ment that he should pay her interest.   He says that by exten-
sions and renewals of the notes he, in the course of some
years, along in 1858, '59, '60, '61, realized therefrom $2000
more.   That he must have made by his skillful handling of
the paper, obtaining evidently even more than legal interest.
That income from the notes his wife did not and could not
claim under their arrangement as hers.   It belonged to him-
self.   Then she had not more than $6000 in her husband's
hands from that source.   She got no more means from any
source until August 27th, 1867, when they allege the sum of
$19,892.98 was received for her by her husband, being the
proceeds of sale of an interest she had in Allegheny county
land.   This, added to the $6000, gives the amount of her en-
tire separate estate as $25,892.98—all having been put in her
husband's possession and under his control, for use in his
business, until she would call for repayment.   Before getting
this latter and larger amount of money, on the 7th day of
April, 1866, appellees bought the Black property in Twen-
tieth ward for $25,000, the husband paying down cash $10,000
and giving the customary securities from himself and wife for
the residue, $15,000.   That residue was not paid up and mort-
gages satisfied until May 9th, 1868, when the interest thereon
would amount to over $1875.   The husband made all the pay-
ments, which, from those figures, make a total of $26,875,

being nearly $1000 more than the amount of his indebtedness to his wife. Her means alone had not then bought and paid for the Black property, but his money and credit contributed thereto.

Four years after this Black purchase, and nearly two years after inception of the debt for which the husband's title was sold, appellees concluded to make a further operation and investment in real estate. On 22d March, 1870, they bought the Bates property, now in question, for $40,000. They paid the consideration in part by selling and conveying to Bates the Black property at $32,000, and the remaining $8000 they raised by *jointly* incurring an indebtedness of $9000 to another party. They afterwards borrowed $14,000 more on this same property for some other operation.

Is this $40,000 tract thus bought by the joint means of husband and wife, and largely on credit, the credit of the husband, to be held as the wife's exclusively in defiance of the husband's creditors? Property purchased by a married woman on credit is not her separate property; her credit is nothing in the eyes of the law. Her credit is her husband's, and her inability to pay for the thing bought out of her own funds causes it, as to the husband's creditors, to be taken as his: Heugh *v.* Jones, 8 Casey 432; Hallowell *v.* Horter, 11 Id. 375; Robinson *v.* Wallace, 3 Wright 133; Gault *v.* Saffin, 8 Id. 307; Lienbach *v.* Templin, 32 Pitts. L. J. 77; 9 Out. 522; Keeney *v.* Good, 9 Har. 349; Gamber *v.* Gamber, 6 Id. 366.

*D. T. Watson* for the appellees.

[MERCUR, C. J. Is there not an Act of Assembly by which a party in possession can compel an adverse claimant to prosecute his ejectment, or be barred?]

None that I know of, applicable to this case. The Act of May 21st, 1881, provides for such a rule after one verdict and final judgment, or verdict and judgment against verdict and judgment; but we have no verdict or judgment here. The Act of April 3d, 1872 (P. L. 33), seems to provide for such a rule in case of a compulsory nonsuit, but not in case of a voluntary nonsuit, as here.

A Master's findings of fact confirmed by the court below will not be reversed except for palpable error. The Master has found in this case, and the court below has confirmed the finding, "That the said 19th Ward tract, to quiet the title to which the bill in this case has been filed, was purchased by said plaintiff, Sarah B., was paid for out of her separate estate, and that none of the said land and no portion of the consideration therefor came to her from her said husband." He further finds that the title which George Thompson claims to this

land, "the evidence before the Master shows clearly to be worthless."

• It is argued that Mrs. McElroy's purchase was, in part, on credit; but as it was upon the credit of her separate estate, this is immaterial. In Seeds v. Kahler, 76 Pa. St. 262, the present chief justice said: "It is well settled that when the wife has a separate estate, and she buys property on the credit of that separate estate, she may hold it against the creditors of her husband: Wieman v. Anderson, 6 Wright 311; Rush v. Vought, 5 P. F. S. 437; Brown v. Pendleton, 10 id. 421; Musser v. Gardner, 16 id. 242. It is not necessary that she shall have paid for it at the time of her purchase. She is not precluded from buying upon credit, provided it be upon the credit of her separate estate." Again, in Sixbee v. Bowen, 91 Pa. St., 152, this same doctrine is approved, and this court said: "It has been repeatedly held that when a married woman, who has a separate estate of her own, buys property on the credit of such estate, she is entitled to claim and hold it as her own against the creditors of her husband."

Have the courts of common pleas in Pennsylvania jurisdiction to grant an injunction in a case like this? We start with the facts that the property in dispute is Mrs. Sarah B. McElroy's, bought and paid for out of her own money—that her husband had no title or right of any kind in it—and that Thompson, the appellant, has no title or right to it—that Thompson has already brought two actions of ejectment for this property, in each of which he took nonsuits—that his pretended title is utterly worthless and merely colorable—yet he threatens and intends to bring other actions of ejectment, based on the same alleged title, for the purpose of compelling Mrs. McElroy out of her own property to pay her husband's debt to Thompson—that Thompson's conduct is malicious and fraudulent, contrary to law and equity—that these actions of ejectment cast a cloud on Mrs. McElroy's title, prevent her from selling her property, and the result will be, unless Thompson be enjoined, that Mrs. McElroy's property will be sacrificed at sheriff's sale on the mortgages. Mrs. McElroy is in possession, and cannot herself bring any common law action to settle her title.

The Married Woman's Act of 1848 and 1850 provides that the real estate of married women "shall not be subject to levy and execution for the debts and liabilities" of the husband. This court has repeatedly held that it will interfere by an injunction to prevent such a levy and sale. It is in contravention of the statutes cited to subject her to the costs, expense and trouble of the repeated and unfounded actions of ejectment, and on this ground even a preliminary injunction would be granted. This question of jurisdiction was most

carefully considered and decided in Hunter's Appeal, 4 Wr. 196, cited and approved in Lyon's Appeal, 11 P. F. S. 15: Stockdale v. Ullery, 1 Wr. 446. Now, when two actions of ejectment have already been brought on the same title, in each of which the plaintiff took nonsuits after the case was tried, and when, on the fullest judicial investigation three times had, it is demonstrated that the plaintiff's title is worthless, and yet he uses it to cloud Mrs. McElroy's title, and threatens other actions of ejectment unless she will pay him a large sum of money—and the fact is, as the Master has found, that unless Thompson is restrained, the result will be that Mrs. McElroy, unable to sell any part of her land to pay off the mortgages, owing to the cloud Thompson's conduct casts upon her title, will have the property sold at sheriff's sale on the mortgages against it—is it not apparent that Thompson's conduct is contrary to law and equity, and should be restrained? She is in possession, and utterly remediless at law; therefore, the broadest ground of equitable jurisdiction, i. e., want of an adequate remedy at law, sustains her case. Add to this that the Master has found that Thompson's conduct in repeatedly bringing these actions of ejectment on what he knows to be a worthless title, is "fraudulent," and done to extort money, and we have another broad ground of equitable jurisdiction, i. e., fraud.

Barclay's Appeal, 12 Norris 52, and the other cases relied upon by appellant are not in point, as the Master demonstrates.

In the case at bar, the facts found were that Thompson's title was worthless, and that the real estate was Mrs. McElroy's individual property. In the trials in court Thompson admitted this by taking nonsuits, and thereby prevented a jury from passing on the facts. The appellant's ground is that for twenty-one years he may bring as many ejectments as he pleases—take nonsuits in each—and thus extort money to buy peace, and that Mrs. McElroy is utterly remediless. Bills of peace to remove clouds from titles and to prevent multiplicity of suits, are well-recognized grounds of equity jurisdiction, and this under the head of fraud: 1 Story on Eq. Jurisprudence, § 711; High on Injunctions, Secs. 64, 327; Orton v. Smith, 18 Howard, 263.

Chief Justice MERCUR delivered the opinion of the Court, January 5th, 1885.

It is well settled law that when a wife has a separate estate, and buys property on the credit of that separate estate, she may hold it against the creditors of her husband: Silveus's Ex'rs v. Porter, 24 P. F. S. 448; Seeds v. Kahler, 26 Id. 262; Sixbee v. Bowen, 10 Norris 149; Lochman v. Brobst, 6 Out. 481.

[Thompson's Appeal.]

The facts found show that the land referred to in this bill was purchased by Mrs. McElroy, and paid for out of her separate estate, and that no part of the consideration which she paid therefor came to her from her husband.   It was therefore not liable for his debts, and the sale on an execution against him passed no title to the appellant.   The facts stated were well known to the latter before this bill was filed.   He had brought two actions of ejectment for the land based on his purchase as the property of her husband.   Each case was brought to trial.   Both parties gave all their evidence.   After counsel had addressed, and the court had charged the jury, the appellant (then plaintiff) took a voluntary nonsuit in each case.   There is no after discovered, or additional evidence tending to impair the validity of the title of the appellee.   Nevertheless with this full knowledge that his pretended title is worthless, the appellant intended, and threatened, to bring another action of ejectment against the appellee, for the same land, and on his same pretended title.   These acts and declarations of the appellant have cast a cloud on the title of the appellee.   The Master also found that the appellant has not maintained his claim to the land in good faith, but that he continues to harass the appellee and demand money as the price of peace under the cloak of purchasing his title, which constitutes such a fraud as to give her a right to seek aid from a court of equity: Lyon's Appeal, 11 P. F. S. 15.

The Act of 11th April, 1848, declares the property of a married woman shall not be subject to levy and execution for the debts or liabilities of her husband.   As therefore it is contrary to both law and equity to thus sell it, a court of equity will enjoin against the sale: Hunter's Appeal, 4 Wright 196; Lyon's Appeal, 11 P. F. S. 15.

The case is therefore within the jurisdiction of a court of equity.   The sale, under the facts clearly proved, was contrary to law, and the continued threat of annoyance is prejudicial to the interests of the community and the rights of the appellee.   Equity is part of the law of this state.   The rules of equity are as binding as those of law: Hawthorn *v.* Bronson, 16 S. & R. 269.   The appellee has no adequate remedy at law.   She is in possession of the property.   She cannot therefore bring ejectment.   Twice has the appellant practically admitted that he has no claim to the land.   His pretended claim has become a fraud upon the appellee, and should be extinguished: Story on Eq. Juris. § 711; High on Injunctions § 372.   The able report of the Master, affirmed by the court, fully sustains the decree.

Decree affirmed and appeal dismissed at the costs of the appellant.